**Noah S. CUTRER and Nicholas D. Olivier, Plaintiffs**

v.

**HUMBLE OIL & REFINING COMPANY, Defendant.**

**Civ. A. No. 8842.**

United States District Court
E. D. Louisiana,
New Orleans Division.

April 3, 1961.

Reuter, Reuter & Schott, J. Richard Reuter, Jr., Arthur C. Reuter, New Orleans, La., for plaintiffs.

Bernard J. Caillouet, .W. J. McAnelly, Jr., Charles Janvier, Andrew McCollam, Jr., H. H. Hillyer, Jr., L. K. Benson, New Orleans, La., for defendant.

WRIGHT, District Judge.

This dispute arises under an oil and gas lease covering substantial acreage, most of it submerged, in and around Stone Island in Plaquemines Parish, Louisiana. Production having occurred, plaintiffs, as landowners and lessors, now seek cancellation of the lease and an accounting for the minerals removed, or, in the alternative, a decree compelling the defendant oil company to pay royalties for all production from the leased premises. At this stage of the proceeding, however, the only question tendered, and the only one decided, is whether cancellation should be awarded on account of failure to pay royalties.

Humble has offered to pay all royalties [1] due under the lease attributable to the landed portion of the described premises but says it is entitled to withhold payments attributable to production from the submerged areas because these are

---

[1] Some question has been raised over the timing and form of defendant's tender of these royalties. Under the circumstances, the offer of royalties was made within a reasonable time after Humble was given notice of settlement of a controversy in the state courts involving title to the land portion of the leased premises. Likewise, the tender in money, rather than oil, was sufficient in view of the lessee's option to purchase the oil at source.

adversely claimed by the State of Louisiana.[2] It invokes a clause of the lease which provides:

> "* * * in the event the land above described, any part thereof, or an interest therein or in the royalties payable hereunder is claimed by others, Lessee shall have the right to withhold without liability for interest thereon payment of royalties on production therefrom or to deposit such royalties in the registry of a court of competent jurisdiction until final determination of Lessor's rights."

The underlying question is, of course, whether the State has "claimed" title to the submerged portions of the Cutrer lease within the meaning of this provision.

The State lease, nominally including all water bottoms in the contested area, of itself provides no answer, for it expressly excludes all acreage "heretofore disposed of by the State," and the plaintiffs here claim under a chain of title from the State antedating the State lease. On the other hand, the State has accepted royalties from its lessees for production from some areas covered by the Cutrer lease and has sanctioned an agreement between defendant and its own lessees[3] for a joint operation of the area immediately surrounding Stone Island which, at least impliedly, asserts its claim to the submerged portions. Yet all of this has been more passive acquiescence than the positive assertion of a claim, and neither the State nor those holding under it have initiated judicial proceedings to clear title. In the circumstances, plaintiffs say that no "claim" has been advanced within the meaning of the lease and that there is, accordingly, no excuse for defendant's withholding royalty payments.

The question is a close one, but, in view of the Louisiana policy against allowing the withholding of royalties on the basis of an adverse claim not judicially asserted,[4] plaintiffs are probably right. For the present, however, that issue may be left unresolved. Humble's position is, at worst, erroneous. There is no proof in the record as presently made up that it acted in bad faith. Until there is it should not be penalized through the harsh sanction of cancellation. Where, as here, "there are grounds for honest doubt as to the rights of the parties," that remedy is inappropriate. Midstates Oil Corp. v. Waller, 5 Cir., 207 F.2d 127, 131; Rudnick v. Union Producing Co., 209 La. 943, 25 So.2d 906, 908. See also, Sohio Petroleum Co. v. V. S. & P. R. R., 222 La. 383, 62 So.2d 615.

Accordingly, there will be judgment denying plaintiff's prayer for cancellation of their lease in favor of defendant on account of non-payment of royalties, without prejudice, however, to the renewal thereof.

---

2. The State of Louisiana has granted a mineral lease to third parties covering an area which includes the acreage in suit.

3. Plaintiffs were not parties to this joint operating agreement.

4. See Act 64 of 1934, LSA–R.S. 30:105 et seq., which, as interpreted by the Louisiana courts (see, e. g., State ex rel. Boykin v. Hope Producing Co., La. App., 167 So. 506, 510–511; State ex rel. Muslow v. Louisiana Oil Refining Corp., La.App., 176 So. 686, 690, affirmed sub. nom. Arkansas Fuel Oil Co. v. State of Louisiana, 304 U.S. 197, 200–201, 58 S.Ct. 832, 82 L.Ed. 1287; State ex rel. Bean v. Caddo Crude Oil Purchasing Corp., La.App., 189 So. 333, 336–337; State ex rel. Brown. v. United Gas Public Service Co., 197 La. 616, 2 So. 2d 41, 43–44), declares "unlawful" the lessee's withholding royalty payments be-. cause of an adverse claim unless and until that claim has been judicially asserted. While the statute is inapplicable "to minerals produced from lands belonging to the state," LSA–R.S. 30:108, it may be doubted whether Humble, in this case, can properly deny its lessor's title and claim the benefit of this exemption. Whether the provisions of the statute can be avoided by agreement is an open question.

Though not strictly applicable, the following decisions of the Louisiana courts confirm a hostile policy toward withholding of oil royalties: Texas Co. v. State Mineral Board, 216 La. 742, 44 So.2d 841; Irion v. Standard Oil Co. of Louisiana, 199 La. 363, 6 So.2d 143.